| | | |
|---|---|---|
| Ondigo LLC | : | |
| | : | |
| | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | |
| v. | : | NO.   2:2020cv01126 |
| | : | |
| intelliARMOR LLC | : | |
| | : | |
| *Defendant* | : | |
| | : | |

## <u>JOINT PRETRIAL STIPULATION</u>

Plaintiff, Ondigo LLC, and Defendant, intelliARMOR LLC, respectfully submit this Joint Pretrial Submission[1].

### I.   AGREED FACTS

1.   This case involves a purchase order entered into between the parties through which Plaintiff contracted to purchase various phone accessories for resale (the "Purchase Order").

2.   The Purchase Order was agreed upon on or around July 2019.  A copy of the Purchase Order is attached as Ex. Ondigo 1.

3.   The terms of the Purchase Order were silent regarding the shipment or delivery date.

---

[1] Plaintiff made the following additions subsequent to the parties' execution of this document: Added ¶¶ 2-3 to Section II.a (Facts Asserted by Plaintiff); added the topics of James Radack's testimony in Section IV.a, which had been inadvertently omitted; and added ¶¶ 4-5 to Section IV.a (Plaintiff's Proposed Findings of Fact).

4.     On July 12, 2019, Ondigo emailed the Purchase Order to intelliARMOR and stated, "Please let me know the next step and when these will ship."

5.     Contemporaneously with the Purchase Order, intelliARMOR submitted to Ondigo an invoice for the Purchase Order dated July 15, 2019.

6.     The invoice dated July 15, 2019 was also silent regarding the shipment or delivery date of the goods.

7.     On June 5, 2019, while the parties were negotiating the Purchase Order, upon request from Ondigo, intelliARMOR submitted to Ondigo a spreadsheet titled "intelliarmor forecast & ETA 060519" that included estimated ship dates and lead times for the goods.  These goods were ultimately ordered through the Purchase Order that was submitted July 12, 2019.

8.     The spreadsheet listed estimated shipping dates ranging from June 15, 2019 to July 30, 2019.  As referenced in ¶ 7 above, the goods listed in the spreadsheet were ultimately ordered through the Purchase Order that was submitted July 12, 2019.

9.     On August 6, 2019, intelliARMOR received from Ondigo a deposit in the amount of $45,595.00 for 50% of the price of the Purchase Order.

10.     On August 12, 2019, intelliARMOR emailed Ondigo an update regarding the status of the Purchase Order.  intelliARMOR represented that

part of the Purchase Order, consisting of cable and power banks, was in production. The remainder of the Purchase Order consisted of lightning cables and wall charges. According to intelliARMOR's August 12, 2019 email, the lightning cables required MFI set up and the wall charges required ETL certification. Through the August 12, 2019 email, intelliARMOR estimated that the lightning cables and wall chargers would be shipped to Ondigo by September 19, 2019.

11.     The MFI and ETL certification processes referenced in the parties' August 12, 2019 email are completed by third-parties. intelliARMOR had to work directly with Apple and ETL in order to get all certifications and approvals. The Apple MFi certification process requires that manufacturers run their iPad and iPhone accessories through compliance and safety tests in order to gain a "Made for iPhone" badge on their product packaging. Each Lightning connector on an MFI-certified cable or other device has a tiny authentication chip, so the device knows it is an MFi-certified accessory. An ETL certification means that products have been tested to set safety standards. The certification comes from Intertek's Electrical Testing Labs. Accordingly, in order to get these certifications, intelliARMOR was required to submit the products to be tested and communicate directly with Apple and ETL regarding any issues. Additionally, these goods required Apple's Product Plan ID ("PPID") certification, which is given by Apple to Hardware manufacturers and software/app developers. PPID holder can use MFI logo

for hardware connectors and components that are required to manufacture iPod, iPhone, iPad, and AirPlay audio accessories.  In order to apply for PPID in the hardware field, especially for lightning cable, there are strict rules relating to product quality and package. All such factories must have a MFi development license.  The process for gaining this certification is as follows: (1) A contract factory prepares product data, such as product name, model, description, brand mark authorization, and package PDF; (2) A completed application along with charge of $550 for each item is sent to Apple; (3) Then there is a wait for Apple to review and approve the application; (4) Then after initial Apple acceptance, the production samples are produced; (5) Then production samples are delivered to a UL lab for product testing; (6) The UL test results are communicated to Apple within 5 working days; (7) Upon UL approval, a final package sample is sent to Apple MFI office for approval; and (8) Finally, after product and packaging approval, PPID is finalized and mass production can begin.  Here, contract factories were utilized for the production of MFI Cables and the ETL Wall charger.  After the deposit was received from Ondigo, orders with Factory A (MFI Cables) and Factory B (1 MFI Cable & Wall Charger) were placed and the PPID (MFI) & ETL certification process began shortly thereafter.

12.     On August 20, 2019, intelliARMOR emailed Ondigo with an update that, "The cables / power banks are well underway, just going through MFI and certifications (always takes longer on the first one)."

13.     On September 3, 2019, upon request from Ondigo, intelliARMOR updated Ondigo that the goods from the Purchase Order would ship in 15 days, in mid-September 2019.

14.     On October 17, 2021 and October 18, 2021, Ondigo requested the status of the Purchase Order.

15.     On October 17, 2019, intelliARMOR emailed Ondigo that "The cables are finished and packaged, they just need to go through our QC inspection and then we will arrange shipment of those along with the power banks (which have been done for over a month now). The wall chargeris [sic] coming too, I was promised it would be ready to go within the next 12 days."

16.     Through its October 17, 2019 email, intelliARMOR additionally explained, "Our lead times are usually much shorter, however for PO5081 [the Purchase Order] there are MFI cables from apple and a wall charger with ETL certification. Because we setup new models just for you, we had to get new certs and have been at the mercy of Apple and the ETL authority in getting approvals."

17.     On October 23, 2019, intelliARMOR emailed Ondigo, "Your power banks and cables are ready, I'm arranging shipment now. Both turned out great. I don't want to hold up shipment anymore, so when the wall charger / 3-in-1 cable is ready, we will air ship those (should be within 10 days)."

18.     On or about November 15, 2019, the power banks and cables were loaded and shipped to Ondigo by intelliARMOR's shipping company.

19.     On November 19, 2019, intelliARMOR emailed Ondigo tracking information and a packing list for an incoming partial shipment of goods from the Purchase Order that were shipped on that date.  The packing list did not include the wall chargers that were part of the Purchase Order.

20.     On December 19, 2019, Ondigo notified intelliARMOR via email that it would not accept delivery of the Purchase Order.

21.     On or about December 21, 2019, the goods listed in the November 19, 2019 packing list arrived in port.

22.     Ondigo thereafter requested a return of the $45,595.00 deposit it paid for the Purchase Order, which intelliARMOR refused to return.

## II.   DISPUTED FACTS

### a.  Facts Asserted by Plaintiff

1.     Ondigo asserts that the parties reached an understanding and agreement that the goods from the Purchase Order would be delivered to Ondigo by October 2019.  Ondigo further asserts that there was no modification to this agreement as to the delivery date for the Purchase Order.

2.     Ondigo asserts that intelliARMOR led Ondigo to believe that all of the goods at issue had all necessary MFI and/or ETL certifications required for production at the time of the Purchase Order.  Ondigo therefore contends

that it had no reason to anticipate any delays to the agreed upon shipment dates on account of the MFI and ETL certification processes.

3.     Ondigo asserts that intelliARMOR never informed Ondigo prior to the Purchase Order that the goods contained in the Purchase Order were custom made products.

4.     Ondigo asserts that intelliARMOR provided inaccurate updates regarding shipment of the Purchase Order. intelliARMOR received several updates from its contractor that the certification processes required for some of the items of the Purchase Order were delayed. intelliARMOR never communicated any of these delays to Ondigo until October 17, 2019, at which point it assured Ondigo that the Purchase Order would be ready for shipment within 12 days. By late December 2019, when the Purchase Order was cancelled, a material part of the Purchase Order had still not been shipped.

intelliARMOR claims that all goods from the Purchase Order had shipped by November 2019 and all arrived by December 2019.

5.     Ondigo asserts that it cancelled the Purchase Order through a verbal communication on or around November 20, 2019, when it learned that part of the Purchase Order had been shipped late and would take approximately a month to arrive and that another part of the Purchase Order was still unaccounted for.

6.     Ondigo claims lost profits of approximately $90,000.00 due to intelliARMOR's failure to make timely delivery of the Purchase

Order. Ondigo's estimate of lost profits is based upon the knowledge and experience of its former general manager.

### b. Facts Asserted by Defendant

1.      intelliARMOR asserts that the Purchase Order and the Invoice contained no specific delivery or shipment date.

2.      intelliARMOR asserts that the Purchase Order and the Invoice do not have language which allows Ondigo to unilaterally cancel the contract.

3.      intelliARMOR asserts that the Purchase Order and the Invoice do not have language which states that Ondigo is entitled to a return of its deposit if Ondigo unilaterally cancels the contract.

4.      intelliARMOR asserts that it has offered to deliver all of the ordered goods to Ondigo, but that Ondigo has rejected intelliARMOR's offer to deliver all of the ordered goods.

5.      intelliARMOR asserts that Ondigo agreed that there would be no cancellations to the order of the custom made products.

6.      intelliARMOR asserts that Ondigo agreed that there would be no refunds for the order of the custom made products.

7.      In June 2019, while the parties were negotiating the Purchase Order, upon request from Ondigo, intelliARMOR submitted to Ondigo a spreadsheet titled "intelliarmor forecast & ETA 060519" that included ship dates and lead times for the goods if they were ordered on June 5th, 2019.

These goods were ultimately ordered through the Purchase Order at a later date.

8. The spreadsheet listed ship dates ranging from June 15, 2019 to July 30, 2019; however, those shipping estimates were based on the order being placed on June 5th 2019 and immediate payment of the deposit by Ondigo to intelliARMOR.

9. The MFI and ETL certification are completed by third-parties for which no exact timetable could be provided.

10. The MFI and ETL certification process was completely at the mercy of Apple and ETL and intelliARMOR could not speed up or otherwise rush this process.Ondigo was advised that most of the products that were part of the Purchase Order would be shipped by ocean transit and that such shipping would take approximately three (3) weeks.

11. Final PPID (MFI) approvals occurred on September 29, 2019, at which point mass production could begin on the cables.

12. For the ETL Wall Charger, it was communicated that production could begin concurrent with certification. Due to the ETL process, the ETL wall charger was not ready for shipment until November 2019

13. intelliARMOR asserts that Ondigo received a partial shipment of the ordered goods in October 2019, and that Ondigo was told by intelliARMOR in November 2019 that the remaining portion of the ordered goods was ready to be shipped.

14.　　intelliARMOR asserts that Ondigo was sent the tracking information for the remaining part of the shipment in November 2019.

15.　　After Ondigo rejected delivery of the goods, the goods incurred warehouse storage fees.

16.　　The remaining powerbanks were ready to be delivered to Ondigo upon its full and complete payment of the order; however, as Ondigo refused to remit full and complete payment for the goods, or to accept delivery of the goods, the final order remained in storage at a warehouse until being sold recently.

## III.　EXHIBITS

### a. Plaintiff's Exhibits

1. Ondigo 1: Purchase Order

2. Ondigo 2: 6/18/19 Email Exchange

3. Ondigo 3: Spreadsheet accompanying the 6/18/19 Email

4. Ondigo 4: 6/21/19 Email Exchange

5. Ondigo 5: 8/6/21 Email Exchange

6. Ondigo 6: 8/12/21 Email Exchange

7. Ondigo 7: 8/20/19 Email Exchange

8. Ondigo 8: 9/3/19 Email Exchange

9. Ondigo 9: 9/3/19 Email Exchange

10. Ondigo 10: 10/23/19 Email Exchange

11. Ondigo 11: 11/20/19 Email Exchange

12. Ondigo 12: Packing List Attachment from 11/20/19 Email Exchange

13. Ondigo 13: Text Messages

14. Ondigo 14: Invoice

15. intelliARMOR0046: 10/22/19 Email

16. intelliARMOR0047: 9/29/19 Email

17. intelliARMOR0048: 8/14/19

18. intelliARMOR0049: 8/8/19 Invoice

19. intelliARMOR0050: 8/15/19 Email

20. intelliARMOR0051: 8/8/19 Text Message

21. intelliARMOR0052: 9/20/19 Message

### b. Defendant's Exhibits

1. intelliARMOR 1: Purchase Order

2. intelliARMOR 2: Spreadsheet accompanying the 6/18/19 Email

3. intelliARMOR 3: 8/20/19 Email Exchange

4. intelliARMOR 4: 10/16/19 Email Exchange

5. intelliARMOR 5: 9/29/19 – 10/22/19 Email Exchange

6. intelliARMOR 6: Email #7 (11/20/19) and Spreadsheet #7.2

7. intelliARMOR 7: Text Messages between Radack and Anderson

8. intelliARMOR 8: Spreadsheet of Storage Costs

## IV. WITNESSES

### a. Plaintiff's Witnesses

1.     James Radack: Mr. Radack was Ondigo's general manager through approximately September 2019 and he remained involved in the transaction at issue following his termination from Ondigo.  Mr. Radack will testify as to the following topics:

- The parties' agreement regarding the Purchase Order, including their agreement and understanding as to delivery date and their negotiation of the Purchase Order;

- Ondigo's projected lost profits from intelliARMOR's failure to make timely delivery of the Purchase Order; and

- The parties' communications regarding the Purchase Order.

### b.  Defendant's Witnesses

1.     Adam Anderson: Mr. Anderson is intelliARMOR's President and was directly involved in the transaction at issue.  Mr. Anderson will testify as to the background of the transaction, the MFI and ETL certification process, the usual shipping and manufacturing times, and the specifics of the negotiations and communications between intelliARMOR and Ondigo related to this transaction.  Mr. Anderson will also testify as to intelliARMOR's damages that resulted from Ondigo's breach of the contract between the parties.

## V.  UNUSUAL ISSUES

1.     intelliARMOR asserts that the parol evidence rule bars introduction of evidence beyond the four corners of the Purchase Order

regarding the agreed upon shipment date for the goods. Ondigo argues that the Purchase Order was silent as to shipment date and did not represent an integrated agreement, and that parol evidence of the parties' understanding and agreement as to shipment date should be considered to determine the parties' agreement as to shipment date. 13 Pa.C.S. § 2202. intelliARMOR anticipates filing a Motion in Limine prior to the trial of this matter related to the parol evidence rule and how the parol evidence rule bars the Court from reviewing evidence and testimony outside of the Purchase Order to infer any agreed upon shipment date for the goods.

## VI. PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### a. Plaintiff's Proposed Findings of Fact

1.     On or around July 2019, the parties entered into a purchase order through which Ondigo LLC ("Ondigo") contracted to purchase various phone accessories for resale from intelliARMOR LLC ("intelliARMOR") (the "Purchase Order").

2.     The terms of the Purchase Order were silent regarding the shipment or delivery date.

3.     Prior to entering into the Purchase Order, the parties discussed and agreed that the goods referenced in the Purchase Order would be shipped within 60 days of the Purchase Order.

4.     intelliARMOR led Ondigo to believe that all of the goods at issue had all necessary MFI and/or ETL certifications required for production at

the time of the Purchase Order. Ondigo therefore had no reason to anticipate any delays to the agreed upon shipment dates on account of the MFI and ETL certification processes.

5.     Prior to the Purchase Order, intelliARMOR never informed Ondigo that the goods contained in the Purchase Order were custom made products.

6.     On August 6, 2019, intelliARMOR received from Ondigo a deposit in the amount of $45,595.00 for 50% of the price of the Purchase Order.

7.     In September 2019, intelliARMOR represented to Ondigo that the goods from the Purchase Order would be shipped by September 15, 2019.

8.     On October 17, 2019, Ondigo requested an update regarding the status of the Purchase Order.

9.     On October 18, 2019, intelliARMOR stated that the goods from the Purchase Order would be shipped within 12 days.

10.     On October 23, 2019, intelliARMOR stated that part of the Purchase Order would be shipped immediately and that the rest of the Purchase Order would be air shipped within 10 days.

11.     On November 19, 2019, intelliARMOR notified Ondigo that part of the Purchase Order was shipped on that date.

12.     Part of the Purchase Order, consisting of 2,000 wall chargers, was not included in the November 19, 2019 shipment.

13. On or around November 20, 2019, Ondigo notified intelliARMOR that it would not accept delivery of the Purchase Order.

14. On December 19, 2019, Ondigo notified intelliARMOR, via email, that it would not accept delivery of the Purchase Order.

15. intelliARMOR never shipped the 2,000 wall chargers that Ondigo ordered through the Purchase Order.

16. intelliARMOR refused to return the $45,595.00 deposit paid by Ondigo.

17. Ondigo suffered lost profits in the amount of $90,000.00 as a result of intelliARMOR's failure to make timely shipment of the goods from the Purchase Order.

### b. Plaintiff's Proposed Conclusions of Law

1. Prior to agreeing upon the Purchase Order, the parties understood and agreed that intelliARMOR would ship the goods from the Purchase Order within 60 days from the Purchase Order. Because the Purchase Order was silent regarding the timing of shipment, the parties' prior understanding and agreement as to the timing of shipment was incorporated into the parties' agreement.

2. The parties' agreement as to the timing of shipment was never modified by agreement of the parties.

3. intelliARMOR's failure to make timely shipment of the goods from the Purchase Order constituted a material breach of the parties' agreement.

4. Ondigo promptly terminated the parties' agreement upon learning that intelliARMOR delayed shipment beyond what had been expressly promised by intelliARMOR.

5. Ondigo properly terminated the parties' agreement before intelliARMOR shipped a material portion of the Purchase Order.

6. Ondigo suffered damages in the amount of $135,595.00, plus interest.

### c. Defendant's Proposed Findings of Fact

1. In May 2019, Ondigo approached intelliARMOR to build a custom premium product program of various powerbanks exclusive for Plaintiff Ondigo.

2. The parties thereafter agreed upon terms for this project. Specifically, the parties agreed that Ondigo would pay 50% of the total order amount as a deposit to start production, and the remaining 50% would be due upon delivery.

3. The parties spent two months negotiating the terms of the transaction, which resulted in a purchase order being agreed to by Ondigo related to the production and delivery of custom "Apple-Certified" products.

4.      Ondigo sought custom power banks, wall chargers and other similar custom goods from intelliARMOR that needed to be MFI certified by Apple and ETL certified from Intertek.

5.      The purchase order from Ondigo was finalized in July 2019, and it required a 50% deposit from Ondigo.

6.      Since Ondigo was ordering custom goods, it was essential for Ondigo to provide intelliARMOR with the deposit prior To intelliARMOR beginning the production process.

7.      However, despite the fact that Ondigo was aware that the deposit was required before any action could be taken by intelliARMOR, Ondigo failed and refused to provide the required deposit until August 2019, delaying the process by at least an additional month.

8.      Importantly, the goods ordered by Ondigo pursuant to the Purchase Order, were custom products that required Apple Certification.

9.      This type of order generally takes about 4-6 months to get certified and to produce, and then another 30 days for shipping (to arrive in USA).  Lead times for Apple Certified products are extended during late fall and summer months, as this is the cycle in which Apple releases new devices and there is a rush by all manufacturers to produce Apple related accessories.

10.     The parties to this type of transaction are subject to Apple's certification process and timing, as only Apple and their certification partners control when certification will be granted.

11.     In June 2019, intelliARMOR advised Ondigo that the initial

order would take longer than anticipated because of the need for the cables to

have a specific MFI certification (which requires both the submission to and

subsequent approval by Apple).

12.     In July 2019, the parties further agreed that the initial

Purchase Orders were to be split into two (2) separate purchase orders, being

Purchase Order #5081 (which was for a total of $91,190 with a $45,595

deposit required), and Purchase Order #5082 (which was for a total of

$16,371 with a $8, 185.50 deposit required) [collectively, the "Purchase

Orders"].

13.     The deposits from Ondigo were received in August 2019 for both

Purchase Orders.

14.     The requested goods for Purchase Order #5082 were delivered

and have been accepted by Ondigo.

15.     The only goods at issue relate to Purchase Order #5081.

16.     In October 2019, intelliARMOR explained that while the final

Apple approvals were still pending, the requested powerbanks were ready,

and intelliARMOR could airship partial shipment.

17.     A partial shipment of the powerbanks was sent by

intelliARMOR and the shipment was received by Ondigo.

18.     On or about November 15, 2019, the remaining order of the powerbanks was loaded and shipped to Ondigo by intelliARMOR's shipping company.

19.     On November 20, 2019, intelliARMOR sent tracking information to Ondigo concerning the incoming goods. Ondigo communicated in writing to intelliARMOR that "all was okay" with Purchase Order #5081 on November 20, 2019.

20.     Part of the Purchase Order, consisting of 2,000 wall chargers, was not included in the November 19, 2019 shipment.  The wall chargers were scheduled to ship via Air to Ondigo and arrive contemporaneously with the Sea shipment.  Ondigo did not question this arrangement.

21.     Despite the fact that these custom, Apple-Certified orders take 4-6 months to certify and produce (plus another month to ship), intelliARMOR worked diligently on behalf of Ondigo and intelliARMOR was able to have the custom/certified products actually certified, produced and delivered to the US within 4 months of Ondigo's payment of the initial deposit.

22.     However, despite the fact that intelliARMOR was able to accomplish this great goal, Ondigo unilaterally cancelled the Order two days before the goods actually arrived in the USA, in violation of the Purchase Order.

23. On December 19, 2019, Ondigo sent intelliARMOR an email stating it would not accept delivery of the goods.

24. On or about December 21, 2019, the remaining Ondigo goods arrived in port, and the goods incurred warehouse storage fees.

25. The remaining powerbanks were ready to be delivered to Ondigo upon its full and complete payment of the order.

26. As Ondigo refuses to remit full and complete payment for the good, or to accept delivery of the goods, the final order remained in storage at a warehouse.

27. Ondigo never notified intelliARMOR that there was any date certain by which they needed the goods.

28. If Ondigo had ever told intelliARMOR that they need the goods by any date certain, intelliARMOR would have rejected the contract because the timing of these types of custom/certified goods usually takes 4-6 months to occur, and is further reliant on Apple and their certification process.

29. Due to Ondigo's unilateral breach of the Purchase Order, intelliARMOR has been forced to expend $28,052.75 to store, transport, and liquidate the improperly rejected goods, and it has been deprived of the balance of the purchase price, being $44,225, which damages total $72,277.75. Through intelliARMOR's efforts, a liquidation buyer was found who purchased the rejected Power Banks and Chargers at a price of $26,100, leaving remaining damages of $46,177.75.

### d. Defendant's Proposed Conclusions of Law

1.      The parties never agreed to any specific shipment or delivery date.

2.      intelliARMOR had the promised goods manufactured, certified and delivered to Ondigo within a reasonable amount of time, given that there was no specific date agreed to for the delivery of the goods and due to the fact that the parties were at the mercy of Apple's certification process.

3.      IntelliARMOR did everything it was required to do pursuant to the Purchase Order:

> (a)  it obtained the custom products;

> (b)  it obtained the certifications from Apple; and

> (c)  it obtained the shipped goods in the USA within 4 months of the Ondigo deposit being paid.

4.      The Purchase Order has no provision which permits Ondigo to cancel the order.

5.      The Purchase Order also has no provision which authorizes a refund to Ondigo.

6.      As this was a custom order, the Order was not able to be cancelled after the process began.

7.      Ondigo breached the agreement between the parties by unilaterally and improperly refusing to take deliver and pay for the remaining goods.

8.     Due to Ondigo's improper actions, intelliARMOR suffered damages in the total amount of $72,277.75, plus interest.  Through intelliARMOR's efforts, a liquidation buyer was found who purchased the rejected Power Banks and Chargers at a price of $26,100, leaving remaining damages of $46,177.75.


                                                _____

                                                DAVID HUSSEY
                                                Counsel for Plaintiff

Dated: December 2, 2021


                                                _____

                                                PHILLIP BERGER
                                                Counsel for Plaintiff

Dated:

rejected Power Banks and Chargers at a price of $26,100, leaving remaining damages of $46,177.75.

DAVID HUSSEY
Counsel for Plaintiff

Dated: December 2, 2021

PHILLIP BERGER
Counsel for Plaintiff

Dated: 12/2/21