UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ONDIGO LLC<br>1366 Ford Road<br>Bensalem, PA 19020<br><br>      Plaintiff,<br> v.<br><br>intelliARMOR LLC<br>17595 Harvard Avenue<br>Irvine, CA 92614<br>    Defendant/Counterclaimant. | CIVIL ACTION<br><br>NO. 2:2020cv01126 |

**DEFENDANT INTELLIARMOR'S PROPOSED CONCLUSIONS OF LAW**

Defendant intelliARMOR, LLC, respectfully submits Defendant's Proposed Conclusions of Law.

**Defendant's Proposed Conclusions of Law**

1. The parties never agreed to any specific shipment or delivery date. [See Purchase Order and Invoice, Defendant's Exhibit "1"; see also 13 Pa. C.S.A. § 2207(b) (the lack of an express demand for a proposed shipment/delivery date keeps such a demand from becoming part of the contract); see also *Reaction Molding Techs., Inc. v. Gen. Elec. Co.,* 588 F. Supp. 1280, 1289 (E.D. Pa. 1984); *Ebasco Services, Inc. v. Pennsylvania Power & Light Co.*, 460 F.Supp. 163 (E.D. Pa. 1978); see also 13 Pa. C.S.A. § 2309 ("The time for shipment or delivery or any other action under a contract if not provided in this division or agreed upon shall be a reasonable time.")].

2. intelliARMOR had the promised goods manufactured, certified and delivered to Ondigo within a reasonable amount of time, given that there was no

specific date agreed to for the delivery of the goods, and due to the fact that the parties were at the mercy of Apple's certification process. [See 13 Pa. C.S.A. § 2309(a) (provides that the question is really if the ordered goods were delivered in a "reasonable time"); see also 13 Pa. C.S.A. § 1205 (a reasonable time for delivery must be implied from the totality of the circumstances including trade usage, course of dealings and the conduct of the parties in the transaction at issue); see also *Marjam Supply Co. v. BCT Walls & Ceilings, Inc.,* 2003 U.S. Dist. LEXIS 11088 (E.D. Pa. June 26, 2003) (finding that similar delays in delivery were not serious enough to preclude payment)].

3. IntelliARMOR did everything it was required to do pursuant to the Purchase Order:

    (a) it obtained the custom products;

    (b) it obtained the certifications from Apple; and

    (c) it obtained the shipped goods in the USA within 4 months of the Ondigo deposit being paid. [See Defendant's Exhibit "1"; see also 13 Pa. C.S.A. § 2309(a) (provides that the question is really whether the ordered goods were delivered in a "reasonable time"); see also 13 Pa. C.S.A. § 1205 (a reasonable time for delivery must be implied from the totality of the circumstances including trade usage, course of dealings and the conduct of the parties in the transaction at issue)].

4. The Purchase Order has no provision which permits Ondigo to cancel the order. [See Defendant's Exhibit "1"; see also *Lenzi v. Hahnemann Univ.*, 445 Pa. Super. 187, 195, 664 A.2d 1375, 1379 (1995) (if a written contract is

unambiguous and held to express the embodiment of all negotiations and agreements prior to its execution, neither oral testimony nor prior written agreements or other writings are admissible to explain or vary the terms of that contract); see also *1726 Cherry Street Partnerships v. Bell Atl. Props., Inc.*, 439 Pa. Super. 141, 146, 653 A.2d 663, 666 (1995) ("[I]n the absence of fraud, accident or mistake the alleged oral representations or agreements are merged in or superseded by the subsequent written contract, and parol evidence to vary, modify or supercede the written contract is inadmissible in evidence."); see also *Provoco Leasing Corp. v. Safin*, 265 Pa. Super. 423, 402 A.2d 510 (1979) (a debtor must be held to the terms of a contract where the debtor has not alleged fraud and has not produced evidence to show a lack of capacity to understand the document)].

5. The Purchase Order also has no provision which authorizes a refund to Ondigo. See Defendant's Exhibit "1"; see also *Lenzi v. Hahnemann Univ.*, 445 Pa. Super. 187, 195, 664 A.2d 1375, 1379 (1995) (if a written contract is unambiguous and held to express the embodiment of all negotiations and agreements prior to its execution, neither oral testimony nor prior written agreements or other writings are admissible to explain or vary the terms of that contract); see also *1726 Cherry Street Partnerships v. Bell Atl. Props., Inc.*, 439 Pa. Super. 141, 146, 653 A.2d 663, 666 (1995) ("[I]n the absence of fraud, accident or mistake the alleged oral representations or agreements are merged in or superseded by the subsequent written contract, and parol evidence to vary, modify or supercede the written contract is inadmissible in evidence."); see also *Provoco Leasing Corp. v. Safin*, 265

Pa. Super. 423, 402 A.2d 510 (1979) (a debtor must be held to the terms of a contract where the debtor has not alleged fraud and has not produced evidence to show a lack of capacity to understand the document)].

6. As this was a custom order, the Order was not able to be cancelled after the process began, since the goods could not be resold to a different buyer within the ordinary course of business (only a liquidation buyer would be interested in purchasing improperly rejected custom goods and only at a steep discount). [See 13 Pa.C.S.A. § 2201(c)(1) (the contract is enforceable if "the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement.")

7. Ondigo breached the agreement between the parties by unilaterally and improperly refusing to take deliver and pay for the remaining goods. [See *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 896 (Pa. Super. Ct. 2011) (in order to recover on a claim for breach of contract, the plaintiff must prove: (1) the existence of a contract; (2) a breach of the contract; and (3) damages resulting from the breach); see also *In re Earle Indus.*, Bankruptcy No. 86-00869G Chapter 11, Adversary No. 86-0382G, 1987 Bankr. LEXIS 2313, at *8 (Bankr. E.D. Pa. Nov. 24, 1987) (finding that under 13 Pa. C.S.A. § 2207(b)(3) an objection to a certain

delivery date by seller prevented buyer's proposed delivery date from becoming part of the contract)].

8. Due to Ondigo's improper actions, intelliARMOR suffered damages in the total amount of $72,277.75, plus interest. Through intelliARMOR's efforts, a liquidation buyer was found who purchased the improperly rejected Power Banks and Chargers at a price of $26,100, leaving remaining damages of $46,177.75 (a liquidation buyer was the only entity that would be interested in purchasing these improperly rejected custom goods). [See *Hahn v. Atlantic Richfield Co.*, 625 F.2d 1095 (3rd Cir. 1980) cert. den. 450 U.S. 981 (1981) (where a breach occurs, "contract law seeks to give the non-breaching party the benefit of his bargain, to put him in the position he would have been in had there been no breach.").

Respectfully Submitted,

*Phillip D. Berger*
PHILLIP BERGER
Counsel for Defendant

Dated: December 22, 2021