UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| Ondigo LLC | : | |
| | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | |
| v. | : | NO. 2:2020cv01126 |
| | : | |
| intelliARMOR LLC | : | |
| | : | |
| *Defendant* | : | |
| | : | |

## ORDER

AND NOW, this _____ day of _____, 2021, upon consideration of Defendant/Counterclaimant intelliARMOR LLC's Motion in Limine and Motion for Directed Verdict, and Ondigo LLC's response thereto, it is hereby ORDERED and DECREED that intelliARMOR's Motions are DENIED.

BY THE COURT:

_____
J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ondigo LLC | : | |
| | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | |
| v. | : | NO.   2:2020cv01126 |
| | : | |
| intelliARMOR LLC | : | |
| | : | |
| *Defendant* | : | |

**ONDIGO LLC'S RESPONSE TO intelliARMOR'S MOTION IN LIMINE AND MOTION FOR DIRECTED VERDICT**

Plaintiff, Ondigo LLC, respectfully submits its Opposition to Defendant's Motion in Limine and Motion for Directed Verdict.

**I.   Ondigo Should Not Be *Per Se* Precluded From Presenting and/or Offering Any Testimony Related To Ondigo's Policies, Procedures, and/or Damages in This Matter.**

intelliARMOR's motion to preclude Ondigo from presenting testimony regarding Ondigo's policies, procedures, and/or damages wrongly presumes that Ondigo's witness lacks personal knowledge regarding these matters.  To the extent that he possesses personal knowledge regarding these matters, it is obvious and straightforward that Ondigo's witness has the capacity to testify as to such matters.

intelliARMOR appropriately cites to FRE 602, which provides that a non-expert witness may only testify as to matters to which he or she has personal knowledge.  Ondigo does not dispute that its witness, James Radack, may not testify as to matters to which he lacks personal knowledge.

However, in presenting its motion, intelliARMOR seemingly presumes, without basis, that Mr. Radack lacks personal knowledge as to relevant policies and procedures and damages.  At trial, it is expected that Mr. Radack will testify that he was Ondigo's general manager during most of the relevant time period at issue and that he stayed personally involved in the transaction at issue following his departure from Ondigo.  Based upon his time with Ondigo, it is expected that Mr. Radack will testify as to relevant matters within his personal knowledge, such as expected delivery times at the time at which Ondigo contracted to buy goods from intelliARMOR (at which point Mr. Radack was still Ondigo's general manager).  It is also anticipated that he will be able to testify as to his personal knowledge of Ondigo's expected profit margin on the transaction at the time at which the agreement was reached (again, at which point Mr. Radack was still Ondigo's general manager).

Contrary to what is suggested by intelliARMOR, there is no rule of evidence which prohibits a former employee from testifying as to matters within his or her personal knowledge.  For the Court to categorically prohibit Mr. Radack from testifying as to matters within his personal knowledge would accordingly constitute a gross abuse of discretion.  Whether or not Mr. Radack has the requisite personal knowledge to testify as to certain matters is an issue for trial and should not be decided based upon intelliARMOR's ridiculous assumptions.

Lastly, it bears noting that intelliARMOR's reference to FRCP 30(b)(6) is misplaced.  That provision relates solely to depositions and subpoenas.  There is no

applicable rule which compels any party to otherwise identify a corporate designee. Beyond that, anyone with personal knowledge may serve as a corporate designee, whether or not they have an official role or title with the organization. *See* FRCP 30(b)(6) (providing that "any person" may serve as a corporate designee). That said, it bears emphasis that: 1) Rule 30(b)(6) is inapplicable; and 2) this same argument was raised and rejected by the Court when intelliARMOR raised it in a motion to quash Ondigo's demand for a trial *de novo*.

II. **Ondigo Should Not Be Precluded by the Parol Evidence Rule from Offering Testimony Related to the Delivery Date Agreed to by the Parties.**

intelliARMOR seeks to preclude Ondigo from introducing evidence regarding the parties' prior agreement and understanding as to the shipment date for the goods that were ultimately ordered by Ondigo pursuant to the parties' subsequent agreement. Contrary to intelliARMOR's argument, evidence of the parties' prior understanding and agreement as to shipment date of the goods in question is not subject to preclusion under the parol evidence rule. As a threshold matter, the parties' two-page, unsigned written agremeent is not a final expression of the parties' agreement and does not contradict the parties' prior agreement as to shipment date, and thus does not trigger the parol evidence rule to preclude evidence of the parties' prior understanding as to shipment date. Beyond that, the parol evidence rule is also inapplicable to preclude evidence of the parties' prior understanding and agreement as to shipment date because: 1) such evidence is relevant and admissible to resolve ambiguity as to whether the parties' written

agreement in fact specifies a shipment date; and 2) such evidence is also admissible as evidence of the parties' understanding and agreement as to what constituted a reasonable time for delivery

### A. The Parol Evidence Rule Is Not Applicable.

The parol evidence rule is inapplicable to preclude evidence of the parties' prior agreement and understanding as to shipment date since the parties' two-page, unsigned written agreement was obviously not intended as a complete expression of the parties' agreement and does not in any manner contradict the parties' prior agreement as to shipment date.

The UCC's parol evidence rule is only applicable where: either 1) the parties' written agreement was "intended also as a complete and exclusive statement of the terms of the agreement"; or 2) parol evidence contradicts the terms of the written agreement. 13 Pa.C.S. § 2202. Section 2202 of Pennsylvania's UCC states:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but *may be explained or supplemented*:
>
> (1) by course of performance, course of dealing or usage of trade (section 1303); and
>
> (2) *by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.*

13 Pa.C.S. § 2202 (emphasis added).

In the case at bar, the parties' written agreement, consisting of a two-page unsigned invoice without any merger clause (Ex. Ondigo-14), was obviously not

intended to serve as a complete and exclusive statement of the terms of the parties' agreement with respect to the entire transaction at issue. As pointed out by intellliARMOR, the writing does not address whether either party could cancel the agreement or whether Ondigo could obtain a return of its deposit. Jt. Pretrial Stipulation, p.8 ¶¶ 2-3. Beyond that, the writing does not expressly address the shipment or delivery date for the goods or the manner of shipment, which was obviously a material term as evinced by the fact that the parties explicitly confirmed these matters prior to reaching their agreement. On June 4, 2019, with respect to the purchase order at issue, Ondigo emailed intelliARMOR to request, "... let's confirm delivery timing." (Ex. Ondigo-2). intelliARMOR responded the next day, on June 5, 2019, by emailing Ondigo a spreadsheet that listed "Ship Date - Via Sea" for each of the goods that Ondigo later ordered. (Ex. Ondigo-2; Ex. Ondigo-3). This correpsondence plainly demonstrates that delivery timing was a material term to the parties' agreement, and its apparent omission from the parties' written agreement inarguably proves that the parties' two-page written memorialization of their agreement was not intended to serve as a complete and exclusive statement of the terms of the parties' agreement with respect to the transaction.

Furthermore, the timing indicated in the parties' June 2019 discussions regarding delivery timing (*i.e.*, shipment via sea within 60 days) is entirely consistent with the written agreement. Nothing in the agreement is contrary to a shipment deadline 60 days from the date of the agreement. The only deadline stated in the writing, an unidentified September 3, 2019 "Due Date", is in fact

generally consistent with an approximately 60 day window for shipment of the goods. As such, the parties' June 2019 agreement and understanding as to delivery timing does not in any manner contradict the parties' subsequent written agreement and therefore may be used by the Court to explain or supplement the written agreement.

### B. Even if the Parol Evidence Is Applicable, Testimony Related to the Parties' Understanding of the Shipment Date Is Admissible to Resolve Ambiguity in the Parties' Written Agreement.

As discussed above, the parties' two-page written agreement (Ex. Ondigo-14) states a September 3, 2019 "Due Date" without identifying what that due date is in reference to. The written agreement thereby presents an ambiguity as to whether the September 3, 2019 "Due Date" listed in the invoice was intended to serve as a due date for intelliARMOR's shipment of the goods or whether it referred to some other deadline. Parol evidence is admissible to help resolve that ambiguity.

A contract is ambiguous if it is reasonably susceptible to different constructions and capable of being understood in more than one sense. Trizechahn Gateway LLC v. Titus, 976 A.2d 474, 483 (Pa. 2009). In this instance, the parties' agreement is ambiguous as to whether the unidentified "Due Date" relates to the shipment of the goods or to something else. Within the four corners of the document, there is no clear indication as to what the "Due Date" references. Likewise, there is nothing within the four corners of the writing which would suggest that the "Due Date" *could not* reference the shipment date for the goods.

Given that the parties' written agreement is ambiguous as to whether the "Due Date" refers to the shipment date for the goods, parol evidence pertaining to the parties' understanding and agreement as to shipment date is therefore relevant and admissible to aid in resolving this ambiguity. When an ambiguity in contractual language exists, "parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances." Miller v. Poole, 45 A.3d 1143, 1146 (Pa. Super. 2012).

In this instance, evidence of the parties' understanding and agreement as to the timing of shipment is plainly relevant towards resolving the ambiguity as to what was meant in reference to the "Due Date" stated in the written agreement. As discussed above, in June 2019, the parties engaged in an email exchange in which Ondigo sought to "confirm delivery timing" and to which intellliARMOR responded with a spreadsheet that listde shipment dates the goods in question. (Ex. Ondigo-2, 3). Those shipment dates (all within 60 days of the June 5, 2019 spreadsheet) neatly coincide with the difference in time between the July 15, 2019 invoice and the September 3, 2019 "Due Date" stated therein. Accordingly, it is plainly obvious that evidence of the parties' June 2019 discussions as to shipment dates is highly relevant towards ascertaining whether the September 3, 2019 "Due Date" in fact refers to the date by which intelliARMOR agreed to ship the order.

### C. Evidence of the Parties' Prior Understanding as to Shipment Date Is Relevant Towards Establishing a Reasonable Time for Delivery.

Assuming *arguendo* that there was no agreement as to shipment date, the parties' prior communications to "confirm delivery timing" for the purchase order are clearly relevant towards establishing what constituted a "reasonable time" for the delivery of goods.

Unless otherwise agreed upon, the time for shipment or delivery under a contract shall be a "reasonable time." 13 Pa.C.S. § 2309(a). What constitutes a "reasonable time" depends on the nature, purpose, and circumstances. 13 Pa.C.S. § 1205. Certainly, the parties' prior communications to "confirm delivery timing" for the purchase order is highly relevant towards ascertaining what constituted a reasonable time for shipment of the goods in question and should therefore be admissible.

### III. intelliARMOR's Motion for Directed Verdict Is Frivolous.

intelliARMOR's motion for directed verdict is utterly frivolous and should not be seriously entertained by the Court.

As a preliminary matter, FRCP 50 only applies *after* "a party has been fully heard on an issue during a jury trial." That, of course, has not yet occurred in this case.

Furthermore, it must be noted to the Court that intelliARMOR's argument is premised upon a material misstatement of fact. In support of its proposition that intelliARMOR's November 2019 shipment fell within a "reasonable time," intelliARMOR cites to a November 20, 2019 written communication from Mr.

Radack, who by that time was no longer employed as Ondigo's general manager. intelliARMOR claims that Mr. Radack communicated that "all was okay" with the purchase order at issue. That is absolutely incorrect. The communication in question is contained in Ex. Ondigo-13, in which Mr. Radack (a former employee) states, "I think jack [Ondigo's CEO] is ok." At trial, Mr. Radack can testify as to what was meant by that statement; however, it plainly did not mean that *Ondigo* somehow communicated that "all was okay" with the purchase order.

Beyond that, intelliARMOR's motion for directed verdict lacks evidentiary support and is premised upon a deceptively incomplete narrative. While intelliARMOR rests its argument on the fact that it notified Ondigo of shipment delays in October 2019, it glosses over the following stipulated facts:

1. In June 2019, intelliARMOR represented that the goods in question would be shipped within 60 days (Exs. Ondigo-2, 3); and
2. On September 3, 2019, intelliARMOR expressly promised shipment by September 18, 2019 (Exs. Ondigo-8, 9).

In isolation, either of these facts gives rise to a question of fact as to what constituted a "reasonable time" for shipment. Beyond that, Ondigo should clearly be entitled to present testimony to add to the story. intelliARMOR's groundless recitation of incomplete and inaccurate facts should not suffice to deprive Ondigo of its day in court.

## IV. <u>Conclusion</u>

For the reasons set forth above at length, it is respectfully submitted that intelliARMOR's motion in limine and motion for directed verdict should be denied.

_____<br>
DAVID HUSSEY

Dated: December 28, 2021

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ondigo LLC<br>1366 Ford Road<br>Bensalem, PA 19020<br><br>*Plaintiff*<br><br>vs.<br><br>intelliARMOR LLC<br>17595 Harvard Avenue<br>Irvine, CA 92614<br><br>*Defendant* | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>NO.   2:2020cv01126 |

## CERTIFICATE OF SERVICE

I, David Hussey, Esq., hereby certify that a true and correct copy of the foregoing was served this date on the following parties via the Court's e-filing system and first-class mail, postage prepaid:

Phillip Berger, Esq.
Berger Law Group, P.C.
919 Conestoga Road, Building 3, Suite 114
Rosemont, PA 19010
*Attorney for Defendant*

Date:  December 28, 2021

DAVID HUSSEY, ESQ
Attorney for Plaintiff

SAND & SAIDEL, P.C.
113 South 21st Street
Philadelphia, PA 19103
(215) 851-0200
dhussey@sandsaidel.com
Identification No. 314814