IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ONDIGO LLC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| intelliARMOR LLC | : | NO. 20-1126 |

## FINDINGS OF FACT and CONCLUSIONS OF LAW

ELIZABETH T. HEY, U.S.M.J.                                                                 March 11, 2022

Plaintiff, Ondigo LLC ("Ondigo"), brought this action for breach of contract alleging that Defendant, intelliARMOR LLC ("intelliARMOR"), failed to deliver certain electronic goods Plaintiff ordered from Defendant through a purchase order ("the Purchase Order"). Complaint ¶¶ 4-13. IntelliARMOR filed a counterclaim for breach of contract based on Ondigo's failure to accept delivery of the goods and pay the balance due. Answer with Counterclaim ¶¶ 30-48. After a one-day bench trial,[1] the parties submitted proposed findings of fact and conclusions of law. The case is now ripe for disposition.

---

[1]The parties consented to magistrate judge jurisdiction and the Honorable Eduardo Robreno referred the case to me for all proceedings including the entry of judgment pursuant to 28 U.S.C. § 636(c) and Local Rule of Civil Procedure 72.1. See Doc. 34.

## I. FACTUAL BACKGROUND[2]

The parties agree that the Purchase Order (Doc. 38-1), which is dated July 11, 2019, constituted a contract for Ondigo's purchase of various cellular telephone accessories from intelliARMOR for resale. Joint Pretrial Stipulation ("Stip.") ¶¶ 1-2; Docs. 38-1; 38-16 at 1.[3] There is a space on the Purchase Order next to the words "Receive by" that is blank, Docs. 38-1; 38-16 at 1, and the parties agree that the Purchase Order is silent as to a shipment or delivery date. Stip. ¶ 3. On July 15, 2019, intelliARMOR sent an invoice for the Purchase Order to Ondigo, for a total contract price of $91,190 consistent with the Purchase Order, with a 50% deposit owed of $45,595. Stip. ¶ 5; Docs. 38-14 at 1-2; 38-16 at 2-3; N.T. at 116, 183. The invoice is also silent as to shipment or delivery date for the goods, Stip. ¶ 6, but it contains a "Due Date" of "09/03/2019." Docs. 38-14; 38-16 at 2. The parties had differing interpretations of the "Due Date" on the invoice. James Radack, the former general manager of Ondigo, testified that he believed it referred to the date the balance of the payment was due. N.T.

---

[2]References to the Notes of Testimony of the January 10, 2022 bench trial will be cited as "N.T." The parties' labeling of exhibit pages was not consistent throughout. To avoid confusion, when referring to exhibits that were attached to the Joint Pretrial Stipulation (Doc. 38), I will cite to the ECF document and page number. The only exhibits not included in Document 38 are intelliARMOR Exhibits 9 and 10.

[3]The Purchase Order identified seven products and the number of each item ordered; 2 USB wall chargers (2,000), 5 foot long metal cables and connectors (4,000), 5 foot long braided USB C to lightning cables (1,000), 5 foot long micro USB cables (2,000), 5 foot long USB C cables (3,500), 5000mAh powerbanks (3,500), and 10000mAh powerbanks (1,500). Purchase Order. The Purchase Order also contained the price per item and total contract price

at 39.  In contrast, Adam Anderson, the president of intelliARMOR, testified that the due date in the invoice indicated that "we needed to have the deposit by September otherwise we may need to revisit our base pricing," id. at 104, 113, and that he informed Ondigo that processing of the order would not begin until the deposit was received.  Id. at 107.[4]  On August 6, 2019, intelliARMOR received Ondigo's deposit of $45,595.  Stip. ¶ 9; Doc. 38-5; N.T. at 37-38.

    The crux of the parties' dispute is the due date for shipment and/or delivery of the ordered goods.  On June 4, 2019, while the parties were negotiating the Purchase Order, Ondigo requested the shipping times and provided a spreadsheet including items Ondigo anticipated ordering.  Doc. 38-2 (with Excel spreadsheet attached).  IntelliARMOR responded the next day by modifying the spreadsheet to include estimated shipping dates for the items listed, ranging from June 28 (23 days) to July 30, 2019 (55 days).  Stip. ¶ 7; Docs. 38-2 (with Excel attachment); 38-3; N.T. at 28-29.[5]  In addition, Mr. Radack testified that he understood it would take three to four weeks for a shipment to arrive once it was shipped by intelliARMOR from its location Shenzhen, China.  N.T. at 31. While Ondigo and intelliARMOR were negotiating, Mr. Anderson explained that certain

---

[4]On July 22 and July 29, 2019, Mr. Anderson emailed Mr. Radack inquiring if the deposit was paid.  intelliARMOR Exh. 10.  Once the deposit was received Mr. Anderson acknowledged receipt of the deposit and said, "Moving forward on everything . . . ."  Id.

[5]The spreadsheet listed goods that were similar but not identical to those ultimately ordered by Ondigo.  N.T. at 31-34, 114-16.

3

items would "ship quick," but that the lightning cables Ondigo anticipated ordering "need to go through MFI, so that pushes those back a bit."  Doc. 38-2 at 1; N.T. at 35-36.[6]

When intelliARMOR received Ondigo's deposit on August 6, 2019, Mr. Anderson advised Mr. Radack "Moving forward on everything (glass and car chargers will ship in about 10 days)," and that he would get "ETA's on the rest as soon as possible."  Doc. 38-5.[7]  On August 12, 2019, Mr. Anderson gave Mr. Radack an update indicating that the glass and car chargers would be shipping "this week," and that intelliARMOR was "getting MFI setup for your lightning cables and ETL for your wall chargers, so we're looking at a September 10th ship date for those."  Doc. 38-6.[8]

---

[6]MFi refers to the "made for iPhone" certification.  Stip. ¶ 11.

[7]The "glass and car chargers" refers to items on a different purchase order between Ondigo and intelliARMOR.  See Purchase Order (contains no glass or car chargers).  The Purchase Order at issue was number 5081, and a separate purchase order was number 5145.  Id.; Docs. 38-8 at 2; 38-18.

[8]The parties stipulated as follows regarding the certification process:
> The MFi and ETL certification processes referenced in the parties' August 12, 2019 email are completed by third-parties. intelliARMOR had to work directly with Apple and ETL in order to get all certifications and approvals.  The Apple MFI certification process requires that manufacturers run their iPad and iPhone accessories through compliance and safety tests in order to gain a "Made for iPhone" badge on their product packaging.  Each Lightning connector on an MFI-certified cable or other device has a tiny authentication chip, so the device knows it is an MFi-certified accessory.  An ETL certification means that products have been tested to set safety standards.  The certification comes from Intertek's Electrical Testing Labs.  Accordingly, in order to get these certifications, intelliARMOR was required to submit the

Mr. Anderson explained that the certification process was delayed due to the season when the order was placed based on Apple's introduction of new products.

> [E]very fall Apple introduces new iPhones and iPads. . . . [S]o on the front end and kind of right on the tail end of that there's a huge rush with all of the factories that specialize in making these accessories for the iPhone to produce accessories to sell in stores to support the devices. If you are manufacturing in the off season, like the . . . late winter, spring, early summer, there's not a lot of production going on and you can get through the certification process much faster.

N.T. at 111. Mr. Anderson said that in his experience the "rush" will start in late July and continue through November or December. Id. Thus, when intelliARMOR provided the spreadsheet in early June, showing estimated shipping dates in 23 and 55 days, the "rush" season had not started. Moreover, in addition to the time required for the certification process, Mr. Anderson testified that additional time was needed for the approval process for the packaging and artwork. Id. at 125.

Mr. Anderson continued to provide updates to Ondigo, but intelliARMOR did not ship the ordered goods at the times anticipated in his emails. See Docs. 38-8; 38-9 at 1-2 (in two email exchanges with Ondigo Sales Manager Shira Barkhordar regarding shipping, Mr. Anderson stated goods would be shipped "in 15 days" and in "mid-September").

In October, intelliARMOR sent to Ondigo a partial air shipment containing 100 units each of the 5000mAh powerbanks (3,500 ordered) and 10000mAH powerbanks

---

products to be tested and communicate directly with Apple and ETL regarding any issues.

Stip. ¶ 11.

(1,500 ordered).  N.T. at 122-23; Doc. 38-10 at 18-19.[9]  On October 17, 2019, Ms. Barkhordar asked for the ETA on the remainder of the purchase order.  Ondigo Doc. 38-10 at 18; N.T. at 44.  Mr. Anderson responded the same day.

> Our lead times are usually much shorter, however for PO5081 [the Purchase Order] there are MFI cables from [A]pple and a wall charger with ETL certification.  Because we setup new models just for you, we had to get new certs and have been at the mercy of Apple and the ETL authority in getting approvals.
>
> The cables are finished and packaged, they just need to go through our QC inspection and then we will arrange shipment of those along with the power banks (which have been done for over a month now).  The wall charger [ ] is coming too, I was promised it would be ready to go within the next 12 days.

Doc. 38-10 at 17-18; Stip. ¶¶ 15 & 16.

On October 23, Mr. Anderson emailed Ms. Barkhordar to advise her that the power banks and chargers were ready.

> Your power banks and cables are ready, I'm arranging shipment now.  Both turned out great.  I don't want to hold up shipment anymore, so when the wall charger/3-in-1 cable is ready, we will airship those (should be within 10 days)

Doc. 38-10 at 15; Stip. ¶ 17.  By approximately November 15, 2019, the power banks and cables were loaded, and on November 19, 2019, intelliARMOR provided Ondigo

---

[9]Ondigo made a payment for this partial shipment, N.T. at 139, although the exhibits do not contain the payment information.  Based on the Purchase Order, the price for the 200 shipped items was $1,370 (100 x $5.85 + 100 x $7.85).

6

tracking information and a packing list.  Docs. 38-11 at 3-11; 38-21; Stip. ¶¶ 18 & 19; N.T. at 128-30.[10]

The parties agree that on December 19, 2019, Ondigo notified intelliARMOR that it would not accept delivery of the Purchase Order.  Stip. ¶ 20; N.T. at 137.[11]  There are indications that the parties had communications prior to December 19 about Ondigo's potentially cancelling delivery.  According to Mr. Radack, who was no longer employed by Ondigo,[12] the president of Ondigo reached out to him in November 2019 about the delay and asked him to follow up with Mr. Anderson.  N.T. at 47-48.  Mr. Radack spoke with Mr. Anderson in an effort to find an alternative buyer for the equipment Ondigo would not accept.  N.T. at 57.  During a text exchange between Msrrs. Radack and Anderson on December 4, 2019, Mr. Anderson thanked Mr. Radack "for the help getting this cleaned up," and indicated that he had contacted a mutual friend to find an alternative channel for the inventory.  Doc. 38-14 at 4.  There is no evidence that Ondigo attempted to cancel the order prior to shipment leaving port.

---

[10]Mr. Anderson testified that, according to the tracking information, the shipment would arrive in the United States on December 21, 2019.  N.T. at 130.  The wall chargers were not included in the sea shipment.  Stip. ¶ 19.

[11]It is unclear whether this communication was via email or telephone.  The stipulation states that this communication was via email, Stip. ¶ 20, however no such email was presented to the court.  Mr. Anderson testified that he received a call from Greg Berger, a representative of Ondigo, informing him that Ondigo would not accept delivery and the conversation was followed up with an email.  N.T. at 137.

[12]Mr. Radack's last day employed by Ondigo was September 30, 2019.  N.T. at 14.  He was the only witness called by Ondigo at trial.

After announcing that it would not accept delivery, Ondigo sought return of its $45,595 deposit, which intelliARMOR did not return. Stip. ¶ 22. IntelliARMOR sought to mitigate its damages by finding alternative buyers for the products Ondigo ordered. Ultimately, intelliARMOR sold the goods for $26,100, but expended an additional $28,052 in shipping and storage costs and the commission for the sale of the goods. N.T. at 140-42; intelliARMOR Exh. 9 at 1.[13] In this suit, Ondigo seeks return of the deposit and lost profits of $90,000. Stip., Plaintiff's Facts ¶ 6. IntelliARMOR seeks the remainder due on the contract plus the additional costs incurred as a result of Ondigo's failure to accept the goods, less the amount for which they eventually sold the products. Stip., Defendant's Facts ¶ 28; intelliARMOR Exh. 9 at 1.

## II.    DISCUSSION

A breach of contract claim is established by the following elements: (1) the existence of a contract, including its essential terms; (2) a breach of contract; and (3) resultant damages. Communications Supply Corp. v. Iron Bow Tech., LLC, 529 F. Supp.3d 423, 431 (W.D. Pa. 2021). The subject matter of this action involves the sale of goods between two commercial businesses for delivery of goods in Pennsylvania and therefore falls within the scope of Article 2 of Pennsylvania's Uniform Commercial Code. 13 Pa. C.S.A. § 2102.

---

[13] The wall chargers, which were not part of the sea shipment, were also sold as part of the mitigation of damages. N.T. at 188.

The parties agree that the Purchase Order issued by Ondigo, which was accepted by intelliARMOR by its issuance of the Invoice, established a contract between them, but disagree regarding the terms of the contract, specifically the timing of shipment/delivery. Neither the Purchase Order nor the Invoice specify a shipment or delivery date.[14] Prior to trial, I determined that the parol evidence rule did not bar the admission of evidence regarding the parties' understanding of the terms of the agreement because the Purchase Order and/or Invoice were not a complete agreement, in particular as to the final payment or a shipping or delivery date. Doc. 45 at 4.

Mr. Radack, Ondigo's former general manager, testified that Ondigo came to do business with intelliARMOR because intelliARMOR was able to get the MFi and UL certifications "at a price point that we felt like would be good for our customers, and we would be able to sell." N.T. at 24. He also stated that the MFi products were the "genesis of the entire order" and what Ondigo "needed the most." Id. at 43. This corresponds with Mr. Anderson's testimony regarding the importance of the certifications to Ondigo. Id. at 108 ("A real hot topic from Ondigo that Mr. Radack shared was having authentic MFI certifications. He had explained they had been burned in the past on some shipments that came in, didn't have the right certifications, and that inventory was lost. So it was critical.").

---

[14]Ondigo agrees that the deposit requirement in the Invoice was not objected to and became part of the parties' agreement as stated in the Purchase Order. Doc. 53, Proposed Conclusions ¶ 2 (citing 13 Pa. C.S. § 2207(b)).

On June 4, 2019, while Ondigo and intelliARMOR were negotiating and over a month prior to the date of the Purchase Order, Mr. Radack asked about "delivery timing" and provided a spreadsheet containing a projected first order.  Doc. 38-2 at 2 (email 6/4/19).  In response the next day, intelliARMOR edited the spreadsheet by indicating shipping dates for various items from June 15 to July 30, 2019.  Doc. 38-3.  Based on the dates in the spreadsheet, Ondigo argues that the goods should have shipped within approximately 55 days of the contract.  Doc. 53, Conclusions of Law ¶ 4.  However, at no point prior to the payment of the deposit did Ondigo indicate that the contract was contingent upon intelliARMOR being able to supply the phone accessories they ordered in a similar turn-around time.  Moreover, undermining Ondigo's position, Mr. Radack testified that based on his on his conversations with Mr. Anderson, he expected shipment in "[s]ixty, ninety days at the most."  N.T. at 24.  Moreover, Mr. Anderson informed Mr. Radack prior to Ondigo sending the Purchase Order that the cables would be delayed "a bit" due to the MFi certification.  Doc. 38-2 at 1.  Mr. Radack did not respond to inquire how long the delay would be or insist on a shipment date.

Mr. Radack testified that while he was employed at Ondigo, he was not aware of anyone from Ondigo notifying intelliARMOR that there was a required date for the delivery of these products.  N.T. at 83.  Thus, there is no evidence that, at any point prior to the sea shipment on November 15, 2019, intelliARMOR was told that there was a required delivery date.  When Mr. Anderson provided updates and anticipated completion dates, he was not told that the delays were unacceptable.  While Ondigo may have been

10

understandably frustrated by the delays, it did not express the materiality of a shipment date when the parties formed their agreement or even afterwards.

Based on all of the evidence, I conclude that there was no specific shipment or delivery date mutually agreed to by the parties. See 13 Pa. C.S.A. § 2207(c) (terms of the contract consist of the terms on which the parties agree, with any supplementary terms incorporated). Pennsylvania law provides that if the time for shipment or delivery is not agreed upon by the parties, a "reasonable time for delivery must be implied." In re Earle Indus., Inc., 88 B.R. 52, 56 (E.D. Pa. 1988) (citing 13 Pa. C.S.A. § 2309(a) ("The time for shipment or delivery . . . if not . . . agreed upon shall be a reasonable time.")).

"What is reasonable will vary depending on such factors as the nature of goods to be delivered, the purpose for which they are to be used, the extent of seller's knowledge of buyer's intentions, transportation conditions, the nature of the market, and so on." Marjam Supply Co. v. BCT Walls & Ceilings, Inc., Civ. No. 02-2890, 2003 WL 21497515, at *2 (E.D. Pa. June 26, 2003); see also In re Earle, 88 B.R. at 56 ("A reasonable time for delivery must be implied from the totality of the circumstances including trade usage, course of dealings, and the conduct of the parties in the transaction at issue.") (citing 13 Pa. C.S.A. § 1205(a) ("whether a time for taking an action . . . is reasonable depends on the nature, purpose and circumstances of the action")).

Here the evidence establishes that intelliARMOR accepted the Purchase Order by issuing the Invoice on July 15, 2019, that Ondigo paid the deposit on August 6, 2019, and that intelliARMOR shipped the goods from China on November 15, 2019. Docs. 38-5; 38-14; N.T. at 128-29. The question is whether 123 days (measured from the invoice) or

11

101 days (measured from the deposit payment) was a reasonable time to ship the order. In the circumstances of this case, I conclude that it was.

Initially, I conclude that the deposit date rather than the invoice date is the more reasonable date to start the clock on the shipment period. The Invoice was unclear as to whether payment of the deposit was necessary to initiate work on the order, and therefore I must determine its meaning from the surrounding circumstances. Although Ondigo argues that production of the goods and obtaining the certifications was not contingent upon the payment of the deposit, the emails support the finding that intelliARMOR was awaiting the deposit. Doc. 38-10 at 7, 17; intelliARMOR Exh. 10 at 1-2. In the absence of countervailing evidence, I conclude that intelliARMOR shipped within 101 days of initiating the order.

Both Mr. Radack and Mr. Anderson understood the Apple certification to be an important part of the contract. N.T. at 24, 43, 108. Prior to Ondigo's Purchase Order, Mr. Anderson had alerted Mr. Radack that the MFi certified cables would be delayed. Doc. 38-2 at 1. At trial, Mr. Anderson explained that production of Apple certified products, like many of the items ordered by Ondigo, is affected by the release of new Apple products. Production is much quicker in the late winter, spring, and early summer, but beginning late-July through November or December, certification is delayed due to the release of new products. N.T. at 111.

Mr. Anderson provided updates as he got them from the production facility. According to Mr. Anderson, intelliARMOR was notified that everything was ready to be shipped in early November, and the shipment was loaded on a ship on November 15,

12

2019. Id. at 128-29. IntelliARMOR received tracking information four days later on November 19, 2019, and Mr. Anderson forwarded the tracking information and the packing list to Ondigo the same day. Id. at 130; Doc. 38-11 at 3. Considering the nature of the goods to be delivered, specifically the necessity for the certifications and the impact of the production schedule, I believe 101 days was reasonable. Thus, I conclude that intelliARMOR did not breach the contract.

Only after intelliARMOR shipped the products and provided Ondigo the shipping information did Ondigo advise intelliARMOR that it would not accept the shipment. Stip. ¶ 20 ("On December 19, 2019, Ondigo notified intelliARMOR via email that it would not accept delivery of the Purchase Order."). Because intelliARMOR shipped within a reasonable period of time, Ondigo was not entitled to cancel the contract. The parties' agreement contained no provision allowing for cancellation, and Ondigo's refusal to accept delivery constituted a breach of the contract.

As for damages, intelliARMOR has presented the court with uncontroverted evidence that, in addition to the remaining $44,225[15] it was owed by Ondigo on the Purchase Order, it expended an additional $28,052.75 in costs for storage, shipping, and the commission for the liquidation of the goods. intelliARMOR Exh. 9 at 1; N.T. at 138-42. IntelliARMOR mitigated its damages by the sale of the goods to T.J. Maxx for

---

[15]This figure is the contract price ($91,190) less the 50% deposit ($45,595), and also less payment for the partial shipment ($1,370). It is not clear why Ondigo paid the full amount for the partial shipment, rather than half in light of the 50% deposit, but I accept intelliARMOR's calculation.

$26,100.[16] All of those amounts were caused directly by Ondigo's breach in refusing delivery, and intelliARMOR reasonably acted to mitigate its damages. Therefore, I conclude that intelliARMOR is entitled to a total award of $46,177.75.

For the reasons stated, I will enter judgment in favor of defendant intelliARMOR and against plaintiff Ondigo on Ondigo's claim, and judgment in favor of counterclaimant intelliARMOR and against counterclaim defendant Ondigo in the amount of $46,177.75 on intelliARMOR's counterclaim.[17]

An appropriate Order follows.

---

[16] According to Mr. Anderson, intelliARMOR was able to sell everything but the cables to T.J. Maxx. N.T. at 142.

[17] In filing its proposed Findings and Conclusions, intelliARMOR included information and documentation that was not admitted into evidence at trial, asserting that it did so in response to questioning from the court during the trial. I have not relied on this information in my Findings and Conclusions. Ondigo has filed a motion in connection with intelliARMOR's briefing, and I will address that motion separately.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ONDIGO LLC | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| intelliARMOR LLC | : | NO.  20-1126 |

## O R D E R

AND NOW, this 11th day of March, 2022, after a bench trial before the undersigned, and for the reasons stated in the accompanying Memorandum, JUDGMENT will be entered in favor of Defendant intelliARMOR LLC and against Plaintiff Ondigo LLC on Plaintiff's claim.  JUDGMENT will be entered in the amount of $ 46,177.75, in favor of Defendant intelliARMOR LLC and against Plaintiff Ondigo LLC on Defendant's counterclaim.  The court will enter a separate Judgment Order after addressing Plaintiff's Motion for Sanctions.

BY THE COURT:

/s/ Elizabeth T. Hey

_____
ELIZABETH T. HEY, U.S.M.J.